## State of Connecticut *v.* Daryl Ruth

Cotter, C. J., Loiselle, Bogdanski, Peters and Healey, Js.

Argued March 5—decision released June 10, 1980

*Suzanne Z. Gottlieb,* assistant public defender, with whom, on the brief, were *Jerrold H. Barnett,* public defender, and *Richard L. Shiffrin,* assistant public defender, for the appellant (defendant).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Walter D. Flanagan,* assistant state's attorney, for the appellee (state).

ARTHUR H. HEALEY, J.  After a trial to the jury, the defendant Daryl Ruth was found guilty of felony murder under General Statutes § 53a-54c.  The defendant has appealed from the judgment rendered and claims that the trial court erred: (1) in denying his motion to suppress a written confession that was allegedly obtained as the result of his illegal arrest; (2) in refusing to charge as requested on the matter of accomplice testimony; and (3) in its charge to the jury on the element of intent.  This last claim of error is based upon the United States Supreme Court decision in *Sandstrom* v. *Montana,* 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979).

From the evidence presented, the jury could have found the following relevant facts: On December 9, 1976, the defendant, David Coward, and Danny Miller went to a grocery store in Bridgeport operated by the victim, Telefordo Diaz, with the intention of committing a robbery.  The defendant and Coward entered the Diaz store while Miller acted as the lookout.  Both Coward and Miller testified at the trial.  Coward testified that in the course of the robbery the defendant shot the victim with a sawed-off shotgun.  A statement the defendant made to the police after being arrested for the crime was also introduced at the trial.  In that statement, the

defendant admitted entering the victim's store on the evening of December 9, 1976, with the intention of committing a robbery. He also stated that he fired his gun, although he claimed that Coward, and not he, shot the victim with the shotgun. The pathologist who performed the autopsy on the victim testified that both a gunshot wound and a bullet wound had been inflicted and that the loss of blood from the gunshot wound was the cause of death.

## I

We consider first the defendant's claim that the trial court erred in denying his motion to suppress the confession that he gave to the police.

On December 13, 1976, information given to the Bridgeport police by the accomplice Danny Miller directly implicated the defendant in the Diaz homicide. The defendant claims, and the state does not dispute, that, on the basis of this information, the police had probable cause to believe that the defendant had been a participant in a felony murder. On December 14, 1976, a search warrant for the apartment where the defendant resided was obtained by the police from a judge of the Court of Common Pleas. On December 17, 1976, at approximately 9 a.m., Inspector Anthony P. Fabrizi, who was in charge of the homicide investigation, went to the defendant's apartment to execute the search warrant. In the process of doing so, the police discovered that the defendant was in the apartment and proceeded to arrest him. After the defendant had been arrested, a search of the apartment was completed by other officers who had accompanied Fabrizi. The defendant was taken to police headquarters. A "Notification of Rights" form was

signed by the defendant at 9:45 a.m. and at 10:15 a.m. the defendant gave the statement introduced at his trial.

The defendant claims that the trial court erred in denying his motion to suppress the confession on the ground that it was obtained as the result of an illegal arrest. We do not agree. The defendant argues that because he was arrested without an arrest warrant, which was constitutionally mandated under the circumstances, and his confession was so causally connected to the illegal arrest, the fourth amendment of the United States constitution required its suppression at his trial. See *Dunaway* v. *New York,* 442 U.S. 200, 99 S. Ct. 2248, 2259, 60 L. Ed. 2d 824 (1979); *Brown* v. *Illinois,* 422 U.S. 590, 602–604, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975); *Wong Sun* v. *United States,* 371 U.S. 471, 487–88, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). The defendant asserts that General Statutes § 54-1f,[1] which permits the warrantless arrest of a person when there is

---

[1] General Statutes § 54-1f (formerly § 6-49) provides: "Sheriffs, deputy sheriffs, chief inspectors and inspectors in the division of criminal justice, constables, borough bailiffs, police officers, special protectors of fish and game and railroad and steamboat policemen, in their respective precincts, shall arrest, without previous complaint and warrant, any person for any offense in their jurisdiction, when such person is taken or apprehended in the act or on the speedy information of others, and members of the division of state police within the department of public safety or of any local police department or any chief inspector or inspector in the division of criminal justice shall arrest, without previous complaint and warrant, any person who such officer has reasonable grounds to believe has committed or is committing a felony. Members of any local police department, when in immediate pursuit of one who may be arrested under the provisions of this section, are authorized to pursue such offender outside of their respective precincts into any part of the state in order to effect the arrest. Such person may then be returned in the custody of such officer to the precinct in which the offense was committed. Any person so arrested shall be presented with reasonable promptness before proper authority."

probable cause to believe he has committed a felony, and upon which the state relies, cannot authorize what the fourth amendment prohibits. Relying on *United States* v. *Reed,* 572 F.2d 412 (2d Cir. 1978),[2] and, in turn, its support from *Coolidge* v. *New Hampshire,* 403 U.S. 443, 459–60, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971), the defendant claims that because he was arrested in his home, the existence of exigent circumstances is the only basis upon which his arrest could be constitutionally valid.[3] Since the police had probable cause to believe that the defendant was directly implicated in the homicide on December 13, 1976, and there was concededly no fear of his flight, the defendant asserts that there were no exigent circumstances to justify his arrest and that the arrest was, therefore, illegal.

The constitutional authority of the police to arrest a felony suspect in his home upon probable cause but without an arrest warrant or exigent circumstances has been recently considered by the United States Supreme Court in *Payton* v. *New York,* 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980).[4] In

---

[2] The Circuit Court in *Reed* held that "in the absence of a warrant to arrest a suspect at home, and in the absence of exigent circumstances, federal law enforcement officers are prohibited by the Fourth Amendment from entering the home of a suspect to effect a felony arrest for which they otherwise have both statutory authority and probable cause." *United States* v. *Reed,* 572 F.2d 412, 424 (2d Cir. 1978).

[3] The Second Circuit has said that "[t]he phrase 'exigent circumstances' refers generally to those situations in which law enforcement agents will be unable or unlikely to effectuate an arrest, search or seizure, for which probable cause exists, unless they act swiftly and without seeking prior judicial authorization." *United States* v. *Campbell,* 581 F.2d 22, 25 (2d Cir. 1978).

[4] The Supreme Court decided *Riddick* v. *New York* together with *Payton* v. *New York,* both on appeal from the New York Court of Appeals; see 45 N.Y.2d 300, 380 N.E.2d 224 (1978); as these cases involved the same fourth amendment issue.

that case, the court concluded that an arrest effected by the nonconsensual entry of the police into a suspect's dwelling, absent a warrant or "exigent circumstances,"[5] violated the fourth amendment's prohibition against unreasonable seizures. Id., 4380. In so doing, the court overruled the decision of the New York Court of Appeals, which had concluded that there was a "substantial difference" between police intrusion to search a home and police intrusion to arrest a resident. *People* v. *Payton,* 45 N.Y.2d 300, 310, 380 N.E.2d 224 (1978). This difference, together with other factors, said the Court of Appeals, justified warrantless entries into a suspect's home to arrest even though entries to conduct a routine search had to be accompanied by a search warrant under the fourth amendment. Id., 310–11. The Supreme Court disagreed and adopted the reasoning expressed in *Dorman* v. *United States,* 435 F.2d 385, 390–91 (D.C. Cir. 1970), by stating that "an entry to arrest and an entry to search for and to seize property implicate the same interest in preserving the privacy and the sanctity of the home, and justify the same level of constitutional protection." *Payton* v. *New York,* supra, 588. It went on to say that "any differences in the intrusiveness of entries to search and entries to arrest are merely ones of degree rather than kind. The two intrusions share this fundamental characteristic: the breach of the entrance to an individual's home." Ibid. The court concluded: "In terms that apply equally to

---

[5] In *Payton,* the court was careful to point out that it was addressing only "the narrow question presented by these appeals." *Payton* v. *New York,* 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980). The majority noted in that regard that "[a]lthough it is arguable that the warrantless entry to effect Payton's arrest might have been justified by exigent circumstances, none of the New York courts relied on any such justification"; ibid.; and that it would not do so either.

seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house." Id., 4380.

Although the court in *Payton* was not presented with the facts of the case before us, the unmistakable message conveyed in *Payton* is that, absent consent to entry or exigent circumstances, a judicial determination of probable cause must stand in between the police and the door of a person's home, whether the object of an entry is to search and seize or to arrest. The evil to be guarded against is the unreasonable intrusion into the sanctity of a person's home. Once a search warrant is obtained and the entry is lawful, however, the police are where they have a right to be and may arrest a resident, provided they have probable cause to do so, under the authority of General Statutes § 54-1f.[6]

An analogous situation is presented where police officers executing a valid search warrant seize items in "plain view" that are not, however, included in the items enumerated in the search warrant. The doctrine that permits such seizures is based upon the premise that the police need not ignore incriminating evidence in plain view while they are operating within the parameters of a valid search warrant or are otherwise entitled to be in a position to view the items seized. See *Harris* v. *United States,* 390 U.S. 234, 236, 88 S. Ct. 992, 19 L. Ed. 2d 1067 (1968) ; *State* v. *Watson,* 165 Conn. 577, 587, 345 A.2d 532 (1973) ; see annot., 29 L. Ed. 2d 1067. In *Coolidge* v. *New Hampshire,* 403 U.S. 443, 466, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971), the Supreme Court stated:

---

[6] We conclude only that, under the facts of this case, General Statutes § 54-1f does not operate in an unconstitutional manner or conflict with the holding of *Payton* v. *New York,* 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980).

"What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification . . . and permits the warrantless seizure."[7] The court justified the doctrine by stating: "Where, once an otherwise lawful search is in progress, the police inadvertently come upon a piece of evidence, it would often be a needless inconvenience, and sometimes dangerous —to the evidence or to the police themselves—to require them to ignore it until they have obtained a warrant particularly describing it." Id., 467–68; see also 2 LaFave, Search and Seizure, A Treatise on the Fourth Amendment (1978) § 4.11.

The police in the case before us were in the defendant's home pursuant to a valid search warrant issued by a neutral and detached magistrate. After entering to execute that warrant, the police discovered the presence of the defendant.[8] Inasmuch as the police had already lawfully entered the defendant's home, it would be a fruitless exercise to require them to obtain another warrant authorizing their re-entry of the home to arrest the defendant, who they had probable cause to believe had committed a felony. Moreover, were such a procedure required, the police, as in the case of the

---

[7] The Supreme Court did point out in *Coolidge* that "the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." *Coolidge* v. *New Hampshire*, 403 U.S. 443, 466, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971).

[8] The defendant suggests that the police, using the search warrant, entered his residence with the "avowed intent to secure his arrest." The record does not support that claim, however. Practice Book, 1978, § 3060B.

inadvertent discovery of incriminating evidence, would run the real risk that during the time that it takes to obtain an arrest warrant a suspect might flee, having been alerted that he has become the focus of police investigation.

We conclude that, as a matter of constitutional law, where the police enter a dwelling for the purpose of conducting a search pursuant to a valid search warrant, they may arrest a resident within that dwelling who they have probable cause to believe has committed a felony pursuant to General Statutes § 54-1f. Hence, the defendant's arrest did not violate the fourth amendment and the court's refusal to suppress the confession made following that arrest was proper.[9]

## II

The defendant claims that the court erred in refusing to charge the jury on the manner in which they should evaluate the credibility of the two self-confessed accomplices in the crime who testified against him. The state concedes the trial court's error, and properly so. Both Coward, who entered the store with the defendant, and Miller, who remained in the automobile used in the robbery, admitted their complicity in the crime. Miller was never arrested or charged with any offense arising from the incident, however. Coward had been convicted of felony murder prior to the defendant's trial and was awaiting sentencing. Although the state had informed him that it would recommend

[9] Because of our conclusion on this ground, we need not determine whether the defendant's confession was so causally connected with his arrest as to be the "fruit" of that arrest. See *Wong Sun* v. *United States*, 371 U.S. 471, 487–88, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963); *State* v. *McLucas*, 172 Conn. 542, 556, 375 A.2d 1014, cert. denied, 434 U.S. 855, 98 S. Ct. 174, 54 L. Ed. 2d 126 (1977).

a sentence of eighteen years to life on the murder conviction, Coward testified at the defendant's trial that he was hoping to receive a more lenient sentence in return for his testimony. This court has recently said that "where warranted by the evidence, it is the court's *duty* to caution the jury as to the testimony of an accomplice in its charge." *State* v. *Ferrara,* 176 Conn. 508, 511, 408 A.2d 265 (1979); see also *Bruton* v. *United States,* 391 U.S. 123, 136, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968); *State* v. *Colton,* 174 Conn. 135, 140, 384 A.2d 343 (1977); 3 Wharton, Criminal Evidence (13th Ed.) § 645. Because of the various motives an accomplice may have for falsifying his testimony, the jury should, where the evidence so warrants, be admonished to scrutinize that testimony with particular care in light of any such disclosed or undisclosed, but apparent, motives. See *State* v. *Ferrara,* supra, 512. The evidence in this case warranted such an instruction, and the defendant had filed two requests to charge relating to the testimony of the accomplices. The court's failure to charge on the subject was clearly in error.

We must now determine whether the court's error in this regard was so prejudicial to the rights of the defendant as to deprive him of a fair trial, and so, to constitute harmful error. See *State* v. *Daniels,* 180 Conn. 101, 111, 429 A.2d 813 (1980); *State* v. *Kinsey,* 173 Conn. 344, 348, 377 A.2d 1095 (1977); *State* v. *L'Heureux,* 166 Conn. 312, 324, 348 A.2d 578 (1974). Stated another way, the question is "whether the claimed erroneous action of the court would have been likely to affect the result." *State* v. *McClain,* 171 Conn. 293, 300, 370 A.2d 928 (1976); see *State* v. *Tropiano,* 158 Conn. 412, 427, 262 A.2d 147, cert. denied, 398 U.S.

949, 90 S. Ct. 1866, 26 L. Ed. 2d 288 (1969). We note that the defendant's claim does not involve the violation of a constitutional right and, hence, the burden rests upon the defendant to demonstrate the harmfulness of the court's error. See *State* v. *Pepe,* 176 Conn. 75, 81, 405 A.2d 51 (1978); *State* v. *Sorbo,* 174 Conn. 253, 257, 386 A.2d 221 (1978); cf. *Chapman* v. *California,* 386 U.S. 18, 24, 26, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967) (where constitutional right violated by the trial court, burden rests upon the state to demonstrate that the error was "harmless beyond a reasonable doubt").

We have concluded that it is not likely that the error involved here affected the result and, therefore, that it did not rise to the level of depriving the defendant of a fair trial. Our conclusion rests upon several factors. The principal consideration upon which it is based is the overwhelming nature of the evidence which corroborated the accomplice testimony. That evidence consists of the defendant's confession coupled with proof of the corpus delicti. Where the authenticity and reliability of a confession are established, "it is certainly true that we have before us the highest sort of evidence." 3 Wigmore, Evidence (Chadbourn Ed.) § 820b, p. 303. The defendant has not challenged either the authenticity or the reliability of the statement he made to the police. The confession was clear and detailed and without any self-contradiction. In it the defendant acknowledged the participants' joint objective of committing a robbery in the victim's grocery store on the evening of December 9, 1976, and that the victim was shot in the course of that robbery. Defendant's confession conflicts with Coward's testimony only to the extent that each claimed to have fired the .32 caliber pistol, a bullet from which

inflicted only a minor wound on the victim, and asserted that the other fired the sawed-off shotgun, the discharge from which caused the victim's fatal injury. In view of the offense (felony murder) of which the defendant was convicted, however, this divergence of accounts is of no consequence. The defendant's confession "covered all of the essential elements of the crime charged." *State* v. *Doucette,* 147 Conn. 95, 98, 157 A.2d 487 (1959); see General Statutes § 53a-54c.

The confession cannot stand alone, however, but must be accompanied by sufficient evidence of the corpus delicti. See *State* v. *Doucette,* supra, 99; *State* v. *Tillman,* 152 Conn. 15, 20, 202 A.2d 494 (1964). In *Tillman,* we adopted Professor Wigmore's definition of the term "corpus delicti," and stated: "The corpus delicti consists of the occurrence of the specific kind of loss or injury embraced in the crime charged." Id., 20. Where a homicide is charged, "the corpus delicti is the fact of the death, whether or not feloniously caused, of the person whom the accused is charged with having killed or murdered." Ibid., quoting 7 Wigmore, Evidence (3d Ed.) § 2072. The confession, then, as evidence tending to prove both the crime charged and the corpus delicti, is not sufficient of itself to prove the former, and without evidence aliunde of facts tending to prove the corpus delicti, is not enough to warrant a conviction. There must be such extrinsic corroborative evidence as will, when viewed in connection with the confession, establish the corpus delicti (fact of death) in the mind of the trier beyond a reasonable doubt. See *State* v. *Doucette,* supra, 99, as qualified by *State* v. *Tillman,* supra, 20.

In this case, there was more than ample evidence of the corpus delicti. Ahmas Haghighat, a pathologist, performed an autopsy on the victim and testified that he died primarily from a massive loss of blood sustained as the result of a gunshot wound that severed his femoral artery. The defendant's confession, which is the most damaging evidence of guilt; *State* v. *Vaughn,* 171 Conn. 454, 460, 370 A.2d 1002 (1976); together with evidence of the corpus delicti and the accomplice testimony, constitute overwhelming evidence of guilt. See *State* v. *Paluga,* 171 Conn. 586, 596, 370 A.2d 1049 (1976); *State* v. *Taborsky,* 139 Conn. 475, 482–83, 95 A.2d 59 (1953); *State* v. *Guastamachio,* 137 Conn. 179, 181–82, 75 A.2d 429 (1950); cf. *State* v. *Sorbo,* 174 Conn. 253, 257, 386 A.2d 221 (1978).

Where accomplice testimony is corroborated by substantial independent evidence of guilt and is not the sole basis of the government's case, it is consistently held in the federal courts that the trial court's failure to give a cautionary instruction does not provide grounds for a new trial. See annot., "Necessity of, and Prejudicial Effect of Omitting, Cautionary Instruction to Jury as to Accomplice's Testimony Against Defendant in Federal Criminal Trial," 17 A.L.R. Fed. 249, §§ 6–10 and cases there cited. A strong line of authority to the same effect may be found in the decisions of state courts. See, e.g., *People* v. *Terry,* 2 Cal. 3d 362, 466 P.2d 961 (1970), cert. dismissed, 406 U.S. 912, 92 S. Ct. 1619, 32 L. Ed. 2d 112 (1972) (corroborating evidence included confession); *People* v. *Powell,* 53 Ill. 2d 465, 292 N.E.2d 409 (1973) (corroborating evidence included confession); *People* v. *Ahmeti,* 28 App. Div. 2d 1195, 284 N.Y.S.2d 951 (1967) (corroborating evidence included confession).

We also base our conclusion on the following additional factors: the consistency of the testimony of the two accomplices and the defendant's confession, except in the matter noted above; cf. *Tillery* v. *United States*, 411 F.2d 644, 646–47 (5th Cir. 1969); the accomplices' potential motives for falsifying their testimony were brought to the jury's attention during the course of the trial; and the instructions given by the court to the jury did suggest that these witnesses might have an interest in "coloring" their testimony.[10] In view of the overwhelming evidence of guilt and these additional considerations, we cannot say that the trial court's error deprived the defendant of a fair trial.

## III

We turn briefly to the defendant's claim that the court's instructions on the element of intent violated the principles set out by the United States Supreme Court in *Sandstrom* v. *Montana*, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979). As the defendant concedes, the challenged language of the charge related only to that portion dealing with the lesser crime of manslaughter in the first degree. See General Statutes §§ 53a-45 (c), 53a-55 (a) (1). Indeed, it is significant that the defendant has not attacked any of the instructions on intent insofar as they relate to the crime of which he was found guilty. Moreover, there is no indication that the instructions concerning manslaughter in the first degree could have been understood by the jury to apply to the instructions on felony murder. Cf.

---

[10] The court's charge provided in part: "You will determine whether or not anyone is interested and, if so, whether or not that interest has colored his or her testimony. In this regard you will recall the testimony of several witnesses, Mr. Coward, Mr. Miller and the officers."

*State* v. *Arroyo,* 180 Conn. 171, 429 A.2d 457 (1980). Inasmuch as the defendant was never convicted of manslaughter in the first degree, and he raises no claim of error with respect to the court's instructions on the elements of the crime of which he was convicted, any error that may have been committed by the court in this regard was harmless. See *State* v. *Rogers,* 143 Conn. 167, 177, 120 A.2d 409, cert. denied, 351 U.S. 952, 76 S. Ct. 850, 100 L. Ed. 1476 (1956).

There is no error.

In this opinion the other judges concurred.