[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO SUPPRESS
On October 16, 1997, the West Haven police officers received information about a drive-by shooting on Coleman Road involving one Marcel Stewart who allegedly fled the scene in a white Nissan Pathfinder. With this information, the police went to Marcel's last known address at 154 Norfolk Street in West Haven. Officer Voets testified he went to 154 Norfolk Street with Detective Ricci in an unmarked police vehicle. The Pathfinder was there and he observed Marcel Stewart and the defendant Jackie Stewart, who was struggling with another officer. He observed two girls leave the vehicle and enter the house at 154 Norfolk Street. He (Officer Voets) spoke with Debra Stewart to get permission to enter the residence to speak with the two females. Ms. Stewart gave the officer permission to enter the residence and he found the two females in the kitchen.
After speaking with them, he asked Debra Stewart for permission to search the residence for a gun. She voiced her concern about guns because of small children on the premises. Officer Bruneau had her sign a consent to search (State's Exhibit 1) which reads in part as follows:
 "I, Debra Stewart, having been informed of my constitutional right not to have a search made without a search warrant and my right to refuse to consent to such a search, do hereby consent to have . . . Sgt. Dimeola, Det. Ricci, Ofc.'s Voets, Bruneau, Towles, Faughnan . . . conduct a complete search of my residence . . . located at . . . 154 Norfolk St. and all attached and connected property. The above listed persons . . . are authorized to take from the aforesaid location or from any person materials or other property as they may desire, and to subject these materials or CT Page 8868 property to forensic tests . . ."
It is significant that this exhibit contains no limitations or restrictions about the extent of the permitted search. It is the state's burden to affirmatively prove that consent was voluntarily given, meaning under the totality of the circumstances the consent was freely given and was not a product of express or implied coercion. State v. Reagan, 209 Conn. 1. 13 (1988). Furthermore, as the court stated in the Reagan case, "when the police are relying upon consent as the basis for their warrantless search, they have no more authority than they have been given by the consent. It is thus important to take account of any express or implied limitations or qualifications attending that consent which establish the permissible scope of the search in terms of such matters as time, duration, area, or intensity." Id., 13. Both Officer Voets and Debra Stewart searched her bedroom looking for a gun. At this time, he was informed another officer located drugs downstairs in the basement area. Officer Voets brought Debra Stewart downstairs and asked her if the police could extend the search to locate drugs. When she agreed, the police took her taped statement, the pertinent portion reads:
 "Date: October 16, 1997, Interviewer: Detective Ricci, Officer Voets. Location: 154 Norfolk Street. Interviewee: Debra Stewart. Subject: Consent to search in which Debra Stewart signed and allowed us To search her house for items involving an incident that occurred a little while ago."
The prior search uncovered a locked tool box which Officer Bruneau discovered. He testified he picked it up and it was heavy and he heard a bump, and opened the box to uncover scales, marijuana, brass knuckles and a knife. The State concedes this is an illegal search. Accordingly, this court sustains the defendant's motion to suppress the above-described items as the fruits of the illegal search from the tool box.
Once the police received the second consent (taped), the search continued of the room allegedly occupied by the defendant and uncovered an open shoe box (State's Exhibit 4) containing marijuana. Secondly, behind the doors was found a wadded up plastic bag with marijuana residue. In contrast to the police witnesses, Debra Stewart, on cross-examination testified that her initial consent to search was confined to her bedroom and Marcel's bedroom. She also testified that the room where the tool CT Page 8869 box and other marijuana was found belonged to her son, Jackie. She testified it was his room and contained his personal effects and clothing and that he paid rent for the use of this room. And, he occupied this room for many years up to and including the date of his arrest.
The defense called Jackie Stewart who testified that the left bedroom in the basement was his for the past ten years. He paid rent every month for this room and that all the items including the marijuana belonged to him. He testified that this room had a key lock although on the day of the search after he left the room, he couldn't recall if he had locked his bedroom. He admitted his name was not on the lease for this residence and that he did not pay for the utilities.
Issues:
Did the police obtain a proper consent to search and secondly, did Debra Stewart have the authority to consent to the search of her son's claimed premises and belongings? Third, even if the search was illegal, was the evidence seized admissible under the inevitable discovery rule?
"In terms that apply equally to seizure of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house." State v. Ruth, 181 Conn. 187, 192-193. Further, "absent consent to entry or exigent circumstances, a judicial determination of probable cause must stand in between the police and the door of a person's home, whether the object of an entry is to search and seize or to arrest. The evil to be guarded against is the unreasonable intrusion into the sanctity of a person's home." Id., 193.
An analogous situation is presented where police officers executing a valid search warrant seize items in "plain view" that are not, however, included in the items enumerated in the search warrants. The doctrine that permits such seizures is based upon the premise that the police need not ignore incriminating evidence in plain view while they are operating within the parameters of a valid search warrant or otherwise entitled to be in a position to view the items seized. Id., 193. Beyond the opening of the locked tool box, the police in this case had every right to be where they were and would easily have discovered the shoebox with marijuana and the plastic bag behind the doors. This has perused carefully the taped statement of Debra Stewart and CT Page 8870 notes the following answers she gave in that statement.
 " . . . So when you signed that consent, you signed the Consent Search allowing us to search the whole house looking for the guns?
A. Yes.
 Further, the other bedroom was your son Jackie?
 A. Not really, Jackie doesn't stay here. Jackie just came from here.
Technically that's his room and his stuff?
 A. Yes, if he comes, he comes that's where he sleep
Is that door usually locked?
A. No.
Okay, you have access to that room?
A. Yes
But he never forbid you for going in there?
A. No
And you are in control of this house?
A. Yes."
As stated in Schneckloth v. Bastamonte 412 U.S. 218, 245
(1973), "a `waiver approach to consent searches would be thoroughly inconsistent with our decisions that have approved' third party consents." In Coolidge v. New Hampshire,403 U.S. 443, 487-490 (1971), "where a wife surrendered to the police guns and clothing belonging to her husband, we found nothing constitutionally impermissible in the admission of that evidence at trial since the wife had not been coerced." This court finds that Debra Stewart was also not coerced and that she exercised control and dominion over her house and her statement clearly CT Page 8871 indicates she was never barred from Jackie's room. As the court in Schneckloth further stated at page 247: "In this case, there is no evidence of any inherently coercive tactics either from the nature of the police questioning or the environment in which it took place. Indeed, since consent searches will normally occur on a person's own familiar territory, the specter of incommunicado police interrogation in some remote station house is inapposite." Finally, this court agrees with the state that Debra Stewart had "common authority" over the so-called bedroom premises of Jackie Stewart.
In State v. Jones, 193 Conn. 70, 80 (1984), that court Stated: "The parents' voluntary consent to the searches in question would, of course, be meaningless unless the state also proved that they had the authority to consent to the search of the defendant's bedroom. In order for third-party consent to be valid, the consenting party must have `possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.'" As stated previously in this opinion, this court finds that Debra Stewart had common authority over the defendant's alleged bedroom. As Debra Stewart stated in her second taped consent, "Is that door usually locked? A. No. Okay, you have access to that room? A. Yes."
It appears that the mother, Debra Stewart had retained sufficient control over the entire dwelling including this bedroom and she had the right to enter it without the defendant's permission. Even if this Court were to find that the evidence seized was done illegally, it is still admissible under the inevitable discovery doctrine. As the State points out in Statev. Vargas, 34 Conn. App. 492, 499 (1994). "Under the inevitable discovery rule, evidence illegally secured in violation of the of defendant's constitutional rights need not be suppressed if the state demonstrates by a preponderance of the evidence that the evidence would have been ultimately discovered by lawful means."
Here, the police were armed with the first unqualified consent to search the Stewart household. Further, Officer Bruneau testified that he was searching for guns and anything that a gun would fit in. While searching the so-called Jackie's bedroom, he found an open shoe box with marijuana and behind the doors, a wadded up plastic bag in a shopping bag with marijuana residue. Both of these objects were in plain view.
Conclusion
CT Page 8872
Prior to the consent of the search at 154 Norfolk Street, the police officers consulted with Debra Stewart and requested her permission to search for guns. Her initial consent gave the officers authority to enter her premises. This consent had the obvious aura of authority on her part and led them to believe she was in full control of this dwelling. Although in her testimony at the suppression hearing Debra Stewart contradicted the officer's testimony, the consent form has all of the indicia of an unqualified consent. Later, she told the officers in her taped statement that Jackie did not reside there although he did use this bedroom when he stayed there. Whether the court rules that there was an unqualified consent to search or that the search was unlawful, the fact remains that the officers acted in good faith and would have discovered the evidence sought to be suppressed which was open and visible and would have been inevitably discovered by them. Accordingly, aside from the closed tool box and its contents, the defendant's motion to suppress the open shoe box and marijuana and the plastic bag containing marijuana residue and any other evidence obtained by the police is hereby denied.
GROGINS, J.