******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* KENNETH JAMISON
(AC 35625)

Beach, Mullins and Bear, Js.

*Argued May 20—officially released September 16, 2014*

(Appeal from Superior Court, judicial district of Fairfield, geographical area number two, McKeever, J.)

*John L. Cordani, Jr.*, assigned counsel, for the appellant (defendant).

*Matthew A. Weiner*, deputy assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Richard L. Palombo, Jr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BEAR, J. The defendant, Kenneth Jamison, appeals from the judgment of conviction, rendered after a jury trial, of possession of narcotics in violation of General Statutes § 21a-279 (a), manufacturing a bomb in violation of General Statutes § 53-80a, and possession of an explosive in violation of General Statutes §§ 29-343 and 29-348.[1] On appeal, the defendant claims that (1) the state presented insufficient evidence to support the conviction of manufacturing a bomb, (2) the trial court committed plain error in failing to give an accomplice credibility instruction, (3) his conviction of all three charges violated the constitutional prohibition against double jeopardy, (4) the court failed to adequately instruct the jury on the elements of possession, and (5) the state violated his rights under the Connecticut constitution by compelling him to provide a handwriting exemplar. We agree with the defendant that the court committed plain error in failing to provide an accomplice credibility instruction and reverse the judgment of conviction on that ground only as to the charges of manufacturing a bomb and possession of an explosive. We are not persuaded by the defendant's other claims.

The following facts, which reasonably could have been found by the jury, and procedural history are relevant to the issues on appeal. Maria Caban lived in a third floor apartment in Bridgeport. The defendant, her boyfriend at the time, would stay with her on occasion. On October 12, 1995, at approximately 8:40 p.m., eight police officers executed a search warrant on the apartment, which had front and rear entrances. One group of officers entered the rear of the apartment using a battering ram while the second group entered through the front. The group entering from the front encountered the defendant, dressed only in boxer shorts, on the stairs leading up to the apartment. The defendant was brought up into the apartment and read his *Miranda*[2] rights. During the search, Caban arrived.

The police searched the premises and found a pair of sneakers that contained a straw and folded dollar bill. Inside of the bill was a white powdery substance that later was revealed through testing to be cocaine. When questioned, the defendant admitted that the sneakers belonged to him. The search also produced an M-1000 explosive device with pennies glued to its exterior, a loaded firearm, an additional small amount of cocaine, a weighing scale, an electric heat sealer for sealing plastic bags, and a notebook with references to drug trafficking. The police also discovered a safe containing business documents signed by the defendant.

The defendant was arrested and charged with two counts of possession of narcotics with intent to sell, manufacturing a bomb, possession of an explosive, and

criminal possession of a firearm. Prior to trial, the defendant was ordered by the court to submit a handwriting exemplar for comparison with the notebook found in the apartment. In October, 1996, the defendant was tried before a jury. After the state rested, the defendant moved for a judgment of acquittal on all charges. The court granted the motion with respect to the two counts of possession of narcotics with intent to sell and directed the state to file an amended information charging the defendant with possession of narcotics. The court denied the motion as to all other charges.

The jury found the defendant guilty of possession of narcotics, manufacturing a bomb, and possession of an explosive device, but acquitted the defendant on the charge of criminal possession of a firearm. The court sentenced the defendant to a total effective term of thirty-seven years of incarceration, execution suspended after thirty-two years, with five years of probation. This appeal followed.

I

First, the defendant claims that the state presented insufficient evidence to support his conviction of manufacturing a bomb in violation of § 53-80a. He argues that gluing pennies onto an existing explosive device does not constitute fabricating a bomb as a matter of law. We are not persuaded.

"Generally, [i]n reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . When, as in the present case, the claim of insufficient evidence turns on the appropriate interpretation of a statute, however, our review is plenary. . . .

"The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case . . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . . In seeking to determine that meaning . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the

legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . . We recognize that terms in a statute are to be assigned their ordinary meaning, unless context dictates otherwise . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Webster*, 308 Conn. 43, 51–52, 60 A.3d 259 (2013).

Section 53-80a provides: "Any person, other than one engaged in the manufacture of firearms or explosives or incendiary devices for lawful purposes, who fabricates, in any manner, any type of an explosive, incendiary or other device designed to be dropped, hurled, or set in place to be exploded by a timing device, shall be guilty of a class B felony." The defendant does not dispute that the explosive device found by the police is a device the manufacture of which the statute prohibits. Therefore, we are concerned only with whether the defendant's actions in relation to the device constitute "fabricat[ion], in any manner . . . ." General Statutes § 53-80a.

The term "fabricate" is not defined within the statutory scheme. "We thus look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *State* v. *Webster*, supra, 308 Conn. 53. Webster's Third New International Dictionary defines "fabricate," in relevant part, as "to form by art and labor" and "to form into a whole by uniting parts." Webster's Third New International Dictionary (1993). We also must consider the additional language, "in any manner . . . ." General Statutes § 53-80a. This phrase can only be construed to broaden the range of acts that are prohibited by the statute. See *American Promotional Events, Inc.* v. *Blumenthal*, 285 Conn. 192, 203, 937 A.2d 1184 (2008) ("[i]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous" [internal quotation marks omitted]).

In the present case, the evidence shows that the defendant glued pennies onto an M-1000 explosive device[3] that Caban had purchased with a bag of fireworks. At trial, the state's explosives expert testified that, in his experience, the purpose of gluing pennies to this type of explosive was to create "an improvised explosive antipersonnel device . . . to cause serious physical injury to anyone [near where] it detonates . . . ."

Considering the plain and unambiguous text of § 53-80a, we conclude that the defendant's actions are prohibited by the statute.[4] By uniting parts, the M-1000 explosive device and the pennies, the defendant formed by art and labor an explosive device designed to be dropped, hurled, or set in place to be exploded by a

timing device. Given the broad scope of the statute, these actions constitute fabrication. Accordingly, the defendant's claim that the state presented insufficient evidence to support his conviction is unfounded.

II

The defendant next claims that the court erred in failing to give an accomplice credibility instruction regarding the testimony of Caban. The defendant seeks review of this unpreserved claim under the plain error doctrine; Practice Book § 60-5; and reversal of the conviction of manufacturing a bomb and possession of an explosive. We agree that the court's failure to provide an accomplice credibility instruction, which was and is a mandatory instruction, was plain error and, accordingly, we reverse the judgment as to the conviction of those charges.

"[The plain error] doctrine, codified at Practice Book § 60-5, is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. [T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . Implicit in this very demanding standard is the notion . . . that invocation of the plain error doctrine is reserved for occasions requiring the reversal of the judgment under review. . . .

"An appellate court addressing a claim of plain error first must determine if the error is indeed plain in the sense that it is patent [or] readily discernable on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . This determination clearly requires a review of the plain error claim presented in light of the record.

"Although a complete record and an obvious error are prerequisites for plain error review, they are not, of themselves, sufficient for its application. . . . [I]n addition to examining the patent nature of the error, the reviewing court must examine that error for the grievousness of its consequences in order to determine whether reversal under the plain error doctrine is appropriate. A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will

result in manifest injustice. . . . In *State* v. *Fagan*, [280 Conn. 69, 87, 905 A.2d 1101 (2006), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007)], we described the two-pronged nature of the plain error doctrine: [An appellant] cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is *both* so clear *and* so harmful that a failure to reverse the judgment would result in manifest injustice." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Sanchez*, 308 Conn. 64, 77–78, 60 A.3d 271 (2013).

Applying this test, we first must determine whether the court's failure to provide an accomplice credibility instruction was a patent or readily discernible error. It is well settled that it is the court's duty to provide an instruction regarding the credibility of an accomplice witness. See *State* v. *Moore*, 293 Conn. 781, 823–24, 981 A.2d 1030 (2009) ("Generally, a defendant is not entitled to an instruction singling out any of the state's witnesses and highlighting his or her possible motive for testifying falsely. . . . An exception to this rule, however, involves the credibility of accomplice witnesses. . . . [When] it is warranted by the evidence, it is the *court's* duty to caution the jury to scrutinize carefully the testimony if the jury finds that the witness intentionally assisted in the commission, or if [he or she] assisted or aided or abetted in the commission, of the offense with which the defendant is charged." [Emphasis altered; internal quotation marks omitted.]), cert. denied, 560 U.S. 954, 130 S. Ct. 3386, 177 L. Ed. 2d 306 (2010). At trial, Caban testified that she had purchased the M-1000 explosive device and that she and the defendant had acted together to glue pennies onto the device. Given the nature of this testimony, we conclude that the court committed a patent and readily discernible error by failing to provide an instruction regarding her credibility as an accomplice.

Next, we must consider whether the court's error is so clear and harmful that a failure to reverse it would result in manifest injustice. "[T]he fact that the instruction . . . was mandated . . . does not, in and of itself, establish the existence of manifest injustice necessary for plain error." *State* v. *Sanchez*, supra, 308 Conn. 83. "[B]ecause an instructional error relating to general principles of witness credibility is not constitutional in nature . . . the defendant bears the burden of establishing that the error deprived him of his due process right to a fair trial." (Internal quotation marks omitted.) *State* v. *Moore*, supra, 293 Conn. 824. Our Supreme Court has identified four factors for consideration when determining whether the trial court's failure to give a cautionary instruction deprived the defendant of a fair trial: "whether (1) the accomplice testimony was corroborated by substantial independent evidence of guilt, (2) the accomplice testimony was consistent, (3) the accomplices' potential motives for falsifying their testi-

mony were brought to the jury's attention, and (4) the court's instructions to the jury suggested that the witnesses might have an interest in coloring their testimony." Id., 825.

Applying these factors to the present case, we conclude that the first factor, which is whether the accomplice testimony was corroborated by substantial independent evidence of guilt, favors the defendant. Caban's testimony was the sole evidence presented that tied the defendant to the explosive device found in Caban's apartment.

The second factor, which is whether the accomplice testimony was consistent, also favors the defendant, as Caban provided inconsistent testimony about the gun found in her apartment. On direct examination, she indicated that the gun belonged to the defendant, but later, on cross-examination, stated that it belonged to another person.

The third factor, which is whether the accomplice's potential motives for falsifying her testimony were brought to the jury's attention, favors the state. The state and the defendant stipulated that Caban previously had been charged in connection with the explosive device found in her apartment and that the charges had been dropped. This stipulation brought her potential motives for falsifying her testimony to the jury's attention. Furthermore, during closing argument, defense counsel suggested that Caban had agreed to testify against the defendant in order to avoid being charged with a crime herself.

Finally, the fourth factor, which is whether the court's instructions to the jury suggested that the witness might have an interest in coloring her testimony, favors the defendant. The court gave only a basic instruction as to witness credibility, asking the jury to consider the character of the testimony, the demeanor of the witness as it bears on credibility, the substance of the testimony and the probability or improbability that what the witness said was true. The court did not instruct the jury to consider potential biases when considering the credibility of witnesses in general or Caban specifically. Thus, there was no suggestion made by the court that Caban might have had an interest in coloring her testimony. See id., 826–27 (court's general instruction to consider biases of witnesses in weighing credibility did not suggest to jury that accomplice witnesses might have had interest in coloring testimony). We conclude that these four factors, when considered together, weigh in favor of the defendant.

This court recently considered a claim of plain error for failure to provide an accomplice credibility instruction in *State* v. *Miller*, 150 Conn. App. 667, 92 A.3d 986, cert. denied, 312 Conn. 926,    A.3d    (2014). In that case, we held that the court's failure to provide the

mandatory accomplice instruction did not require reversal pursuant to the plain error doctrine because our failure to reverse would not result in manifest injustice. Id., 681–82. That case, however, is distinguishable from the present case in that in *Miller*, the trial court gave a credibility instruction that directed the jury to consider whether any witness had any interest in the outcome of the case or any bias or prejudice concerning any party or any matter involved in the case. Id., 681. The trial court also specifically instructed the jury that it had to consider whether the witnesses in the case had any interest in its outcome or any bias or prejudice as to any party or matter involved in the case, and the court further instructed that the jury could use the prior criminal history of the defendant's coconspirator and accomplice in assessing her credibility. Neither of these safeguards was in place in the present case, as the court gave no instruction as to bias and did not specifically instruct the jury in any way as to Caban's testimony.

Our Supreme Court recently addressed the issue of a court's failure to provide an accomplice credibility instruction as plain error in *State* v. *Moore*, supra, 293 Conn. 781, holding that the lack of such an instruction did not require reversal because its failure to reverse would not result in manifest injustice. Id., 829. *Moore* is also distinguishable from the present case, as there was substantial evidence presented by the state at trial corroborating the accomplices' testimony, and the testimony of two of the relevant witnesses was consistent as to the defendant's role in the charged crime. Id., 825–26. In the present case, no evidence besides Caban's testimony tied the defendant to the explosive device, and an inconsistency in her testimony was identified during cross-examination.

Considering all of the factors, we are persuaded that the lack of the mandatory accomplice credibility instruction in the present case jeopardized the fairness of the defendant's trial to a degree significantly greater than in *Miller* and *Moore* and, therefore, we conclude that manifest injustice would result without a reversal of the defendant's conviction of manufacturing a bomb and possession of an explosive.[5]

In summary, the court's failure to provide an accomplice credibility instruction was plain and readily discernible error. The court's failure to do so deprived the defendant of a fair trial and, therefore, our failure to reverse the defendant's conviction of manufacturing a bomb and possession of an explosive after recognition of this error would result in manifest injustice. The two prongs of the plain error doctrine are therefore satisfied in this case and reversal of the conviction on the charges in question is required.

### III

Next, the defendant claims that his conviction of all

three charges violated the constitutional prohibition against double jeopardy on two grounds.[6] First, he claims that the charges brought against him for possession of an explosive and manufacturing a bomb arose out of the same act or transaction and represented the same offense for the purposes of double jeopardy analysis. Second, he claims that his conviction of possession of narcotics following his acquittal of possession of narcotics with intent to sell amounted to two prosecutions for the same offense. The defendant seeks review of these unpreserved claims pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[7]

We begin by setting forth the standard of review and governing legal principles. "A defendant's double jeopardy claim presents a question of law, over which our review is plenary. . . . The double jeopardy clause of the fifth amendment to the United States constitution provides: [N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb. The double jeopardy clause [applies] to the states through the due process clause of the fourteenth amendment. . . . This constitutional guarantee prohibits not only multiple trials for the same offense, but also multiple punishments for the same offense in a single trial. . . . Although the Connecticut constitution does not include a double jeopardy provision, the due process guarantee of article first, § 9, of our state constitution encompasses protection against double jeopardy." (Citation omitted; internal quotation marks omitted.) *State* v. *Bernacki*, 307 Conn. 1, 9, 52 A.3d 605 (2012), cert. denied, U.S. , 133 S. Ct. 1804, 185 L. Ed. 2d 811 (2013).

A

The defendant first claims that his conviction of possession of an explosive and manufacturing a bomb violated the constitutional prohibition against double jeopardy. He argues that the two charges arise out of the same act or transaction and represent the same offense for the purposes of double jeopardy analysis.[8] Although the claim is reviewable, as the record is adequate for review and the claim is of constitutional magnitude, we are not persuaded that possession of an explosive and manufacturing a bomb are the same offense under our test and, therefore, we conclude that the claim fails under the third prong of *Golding*.

"Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met. . . . Traditionally we have applied the *Blockburger* test to determine whether two statutes criminalize the same offense, thus placing a defendant prosecuted under both statutes in double jeopardy: [W]here the same act or transaction constitutes a violation of two distinct statutory provisions,

the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. *Blockburger* v. *United States* [284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932)]. This test is a technical one and examines only the statutes, charging instruments, and bill of particulars as opposed to the evidence presented at trial." (Internal quotation marks omitted.) *State* v. *Bernacki*, supra, 307 Conn. 9.

Here, the defendant was charged with possession of an explosive in violation of §§ 29-343[9] and 29-348,[10] and manufacturing a bomb in violation of § 53-80a.[11] The statutory elements of possession of an explosive are (1) possession (2) of an explosive as defined by the statutory definition. The statutory elements of manufacturing a bomb are (1) fabricating, in any manner, (2) any type of explosive, incendiary or other device, (3) designed to be dropped, hurled, or set in place to be exploded by a timing device.

Our task is to determine whether conviction of each crime requires proof of a fact that the other does not. Considering the statutory language, it is apparent that both crimes require proof of a fact that the other does not. In order for a person to be convicted of possession of an explosive, the state must prove that such person possessed the explosive. Such proof is not necessary to support a conviction of manufacturing a bomb.[12] In order for a person to be convicted of manufacturing a bomb, the state must prove that the person fabricated the bomb. Fabrication is not an element of the crime of possession of an explosive. Accordingly, possession of an explosive and manufacturing a bomb are not the same offense under the applicable test, and the defendant's claim fails under the third prong of *Golding*.

B

Next, the defendant claims that his conviction of possession of narcotics following his acquittal of possession of narcotics with intent to sell violated the constitutional prohibition against double jeopardy. He argues that he faced two prosecutions for the same offense when the court allowed the state to add a charge of possession of narcotics to its information after granting his motion for a judgment of acquittal of possession of narcotics with intent to sell. Although the claim is reviewable, as the record is adequate for review and the claim is of constitutional magnitude, we are not persuaded that the defendant was prosecuted a second time and, therefore, the claim fails under the third prong of *Golding*.

As set forth previously, our review of a defendant's double jeopardy claim is plenary. In addition to protecting against the imposition of multiple punishments for the same offense, the double jeopardy clause of the United States constitution "protects against a second

prosecution for the same offense after acquittal." *State* v. *Hedge*, 297 Conn. 621, 666, 1 A.3d 1051 (2010). In order for this type of protection to be implicated, a defendant must, (1) for the same offense (2) as to which he was previously acquitted, (3) be prosecuted a second time.

In the present case, the defendant initially was charged with possession of narcotics with intent to sell. After the state rested, the court granted the defendant's motion for a judgment of acquittal on that charge and directed the state to file an amended information that included a charge of possession of narcotics. The state filed the new information the following day. The state did not seek to open its case in order to present additional evidence or testimony. Following closing arguments and jury instructions, the jury found the defendant guilty of possession of narcotics.

First, we must determine whether the crimes at issue constitute the same offense for the purposes of double jeopardy. As set forth previously, whether a charged crime constitutes the "same offense" as another for the purposes of double jeopardy is analyzed on the basis of the principles espoused in *Blockburger* v. *United States*, supra, 284 U.S. 299. Under this test, any lesser included offense constitutes the "same offense" as its greater offense for the purposes of double jeopardy analysis. *Brown* v. *Ohio*, 432 U.S. 161, 167–68, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977).

Here, it is undisputed that, as a lesser included offense, possession of narcotics represents the same offense as possession of narcotics with intent to sell for the purposes of double jeopardy. See *State* v. *Polanco*, 308 Conn. 242, 244, 61 A.3d 1084 (2013). Therefore, the charge included in the amended information was the "same offense" as that ruled upon in the motion for a judgment of acquittal.

Next, we consider whether the defendant was acquitted of the charge of possession with intent to sell for double jeopardy purposes. Double jeopardy protection applies equally to acquittals rendered by a jury or by a judge in ruling on a motion for acquittal. *Smith* v. *Massachusetts*, 543 U.S. 462, 467–68, 125 S. Ct. 1129, 160 L. Ed. 2d 914 (2005). "[A]n acquittal . . . encompass[es] any ruling that the prosecution's proof is insufficient to establish criminal liability for an offense," including a judgment of acquittal during a jury trial. *Evans* v. *Michigan*, U.S. , 133 S. Ct. 1069, 1074–75, 185 L. Ed. 2d 124 (2013); see also *Smith* v. *Massachusetts*, supra, 467–68.

Here, the defendant was acquitted of the charges of possession of narcotics with intent to sell when the judge granted his motion for a judgment of acquittal.[13] See *Evans* v. *Michigan*, supra, 133 S. Ct. 1069 ("[I]t is plain that the [trial court] . . . evaluated the [State's]

evidence and determined that it was legally insufficient to sustain a conviction. . . . This ruling was not a dismissal on a procedural ground unrelated to factual guilt or innocence . . . but rather a determination that the State had failed to prove its case." [Citations omitted; internal quotation marks omitted.]); see also *State* v. *Kruelski*, 250 Conn. 1, 7, 737 A.2d 377 (1999) ("[w]here the court, before the jury returns a verdict, enters a judgment of acquittal . . . [retrial] will be barred . . . when it is plain that the [trial court] . . . evaluated the Government's evidence and determined that it was legally insufficient to sustain a conviction" [internal quotation marks omitted]), cert. denied, 528 U.S. 1168, 120 S. Ct. 1190, 145 L. Ed. 2d 1095 (2000).

Finally, we must determine whether the defendant faced a second prosecution. "[S]ubjecting [a] defendant to postacquittal factfinding proceedings going to guilt or innocence violates the Double Jeopardy Clause." (Internal quotation marks omitted.) *Smith* v. *Massachusetts*, supra, 543 U.S. 467. The clause is not violated when a defendant is not exposed to trial or trial-like proceedings, even when the result is a reversal of the acquittal. Id. ("[w]hen a jury returns a verdict of guilty and a trial judge [or an appellate court] sets aside that verdict and enters a judgment of acquittal, the Double Jeopardy Clause does not preclude a prosecution appeal to reinstate the jury verdict of guilty"). Reversal is permissible under these circumstances because "[c]orrection of an error of law at that stage [does] not grant the prosecutor a new trial or subject the defendant to the harassment traditionally associated with multiple prosecutions." *United States* v. *Wilson*, 420 U.S. 332, 352, 95 S. Ct. 1013, 43 L. Ed. 2d 232 (1975).

Here, the defendant was not subjected to postacquittal fact-finding proceedings going to his guilt or innocence on the charge of possession of narcotics. No additional witnesses or testimony were presented. Rather, the conviction was based solely on the case made by the state on the original information charging possession with intent to sell. From the court's actions and its instruction to the state to file an amended information charging only possession, it is clear that the court found that the state had failed to prove the intent to sell element of the charge of possession with intent to sell. There was no harassment of the defendant, as the trial continued on the same schedule as it would have without the filing of the amended information. Under these circumstances, we cannot conclude that the defendant was prosecuted twice. Accordingly, the defendant's double jeopardy claim fails under the third prong of *Golding*.

## IV

Next, the defendant claims that the court failed to adequately instruct the jury on the elements of possession of narcotics.[14] Specifically, he argues that the

court's instructions (1) conflated two elements of possession—knowledge of the contraband's presence and knowledge of the contraband's character—and (2) erroneously informed the jury that it could infer those elements from his possession of the contraband. The defendant seeks review of this unpreserved claim pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40. Although the claim is reviewable, as the record is adequate for review and the claim is of constitutional magnitude; see *State* v. *Boyd*, 115 Conn. App. 556, 562, 973 A.2d 138 (constitutionally axiomatic that jury be instructed on essential elements of crime charged), cert. denied, 293 Conn. 912, 978 A.2d 1110 (2009); we are not persuaded that the instructions were inadequate and, therefore, we conclude that the claim fails under the third prong of *Golding*.

"Our standard of review with regard to claims of instructional error is well established. [I]ndividual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Where . . . the challenged jury instructions involve a constitutional right, the applicable standard of review is whether there is a reasonable possibility that the jury was misled in reaching its verdict." (Citation omitted; internal quotation marks omitted.) Id., 562–63.

"When, as here, a defendant is charged with possession of narcotics . . . and the contraband is not found on his person, the state must proceed on the theory of constructive possession, that is, possession without direct physical contact. . . . To prove . . . constructive possession of a narcotic substance, the state must establish beyond a reasonable doubt that the accused knew of the character of the drug and its presence, and exercised dominion and control over it. . . . In our criminal statutes concerning possession, control of the object must be exercised intentionally. . . . That intent may be proved by circumstantial evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Fasano*, 88 Conn. App. 17, 25, 868 A.2d 79, cert. denied, 274 Conn. 904, 876 A.2d 15 (2005), cert. denied, 546 U.S. 1101, 126 S. Ct. 1037, 163 L. Ed. 2d 873 (2006). "Where the defendant is not in exclusive possession of the premises where the narcotics are found, it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference." (Internal quotation marks omitted.) *State* v. *Martin*, 285 Conn. 135,

150, 939 A.2d 524, cert. denied, 555 U.S. 859, 129 S. Ct. 133, 172 L. Ed. 2d 101 (2008).

In the present case, the trial court instructed the jury with regard to the possession element of the narcotics charge as follows: "For you to find the defendant guilty of [possession of narcotics], the state must prove beyond a reasonable doubt that the defendant knowingly possessed or had under his control a narcotic substance. An element of the offense of possession of narcotics is that the accused knowingly possessed a narcotic substance. An act is done knowingly if it is done voluntarily and purposely. Knowledge may be inferred from possession. In other words, if you find possession proved beyond a reasonable doubt, you can logically and reasonably infer that the defendant had knowledge that he possessed the subject item. Knowledge can also be inferred from all of the facts, circumstances and evidence in the case.

"Possession, as used in criminal statutes, ordinarily signifies intentional control of a designated thing accompanied by knowledge of its character. The accused will be guilty of a violation of this statute if, in fact, he did possess cocaine, which . . . as I have instructed you, is a narcotic substance. The word possession, as used in the law, has no technical meaning. It does not mean that one must have a narcotic substance on his person. That, however, is one form of possession. It does mean having something under one's control or dominion, as you speak ordinarily of things. We possess a thing when we have it under our immediate control or dominion. You possess the articles on your person because obviously they are within your immediate control or dominion. I possess the records on the bench before me, and it's obvious that they are obviously within my immediate control or possession. I also possess the briefcase, which happens to be in my chambers, because it's under my control. I possess the furniture and other items in my home, even though I am not actually there now, for the same reason."

Considering the defendant's first argument, which is that the court's instructions conflated the elements of knowledge of the drug's presence and knowledge of the drug's character, we deem it meritless. On the contrary, the court expressly distinguished between those two elements in instructing the jury that possession "ordinarily signifies intentional control of a designated thing *accompanied by* knowledge of its character." (Emphasis added.)

We are equally unconvinced by the defendant's argument that the court's instruction to the jury that it could infer knowledge of the drug's presence and character from his possession of the drug was improper. Although our Supreme Court has clearly stated that it is improper to infer that an accused has knowledge of contraband's presence or character on the basis of his or her nonex-

clusive possession of the *premises* in which the contraband is found; see *State* v. *Martin*, supra, 285 Conn. 150; the defendant has not identified any authority suggesting that it is improper to infer that an accused has such knowledge on the basis of his or her possession of the contraband itself. If a jury is convinced that an accused has control and dominion over certain contraband even though it was found in premises not in the accused's exclusive possession, it is indeed reasonable to infer that the accused is aware of the presence and character of that contraband. Accordingly, there was no flaw in the court's instructions regarding the defendant's possession of narcotics.

V

Finally, the defendant claims that the state violated his rights under the Connecticut constitution in compelling him to provide a handwriting exemplar. Although he acknowledges that such protection is not inherent in the right against self-incrimination contained in the fifth amendment to the federal constitution, he argues that the Connecticut constitution's analogous provision affords greater protection than its federal counterpart. The defendant seeks review of this unpreserved claim pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40. We assume for purposes of analyzing the defendant's argument that he has satisfied the second prong of *Golding*; but see *State* v. *Evans*, 44 Conn. App. 307, 321, 689 A.2d 494 (claim that compelling defendant to display teeth violated article first, § 8, of Connecticut constitution was not of constitutional magnitude and this did not satisfy second prong of *Golding*), cert. denied, 240 Conn. 924, 692 A.2d 819 (1997). Even assuming that the claim is reviewable, the record is adequate for review and the claim is of constitutional magnitude, we are not persuaded that a clear constitutional violation occurred and, therefore, the claim fails under the third prong of *Golding*.

The fifth amendment to the United States constitution provides in relevant part that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself"; U.S. Const., amend. V; whereas the Connecticut constitution provides in relevant part that "[n]o person shall be compelled to give evidence against himself . . . ." Conn. Const., art. I, § 8. Despite this textual divergence, our Supreme Court has concluded that "there is really, in spirit and in principle, no distinction arising out of such difference of language." *State* v. *Asherman*, 193 Conn. 695, 714, 478 A.2d 227 (1984) ("if there is a constitutional distinction to be drawn in self-incrimination cases between giving testimony and giving evidence, our cases have not reflected it"), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985). In accordance with this analysis, our courts consistently have declined to construe the Connecticut provision more broadly than the right provided by the

federal constitution. *State* v. *Lockhart*, 298 Conn. 537, 552, 4 A.3d 1176 (2010); *State* v. *Castonguay*, 218 Conn. 486, 495–96, 590 A.2d 901 (1991).

The United States Supreme Court has considered whether the federal constitution prohibits compulsory handwriting exemplars and held that this type of evidence does not fall within the scope of the fifth amendment's protection because it is nontestimonial in nature. *Gilbert* v. *California*, 388 U.S. 263, 266–67, 87 S. Ct. 1951, 18 L. Ed. 2d 1178 (1967). Although Connecticut appellate courts have not addressed whether the state constitution acts to prohibit the compelled production of handwriting exemplars specifically, this court and our Supreme Court have uniformly determined that, like its federal counterpart, article first, § 8, of our state constitution applies only to testimonial evidence. See *State* v. *Asherman*, supra, 193 Conn. 715 (compelling defendant to submit to providing dental impression did not violate article first, § 8); *State* v. *Evans*, supra, 44 Conn. App. 321 (compelling defendant to display teeth did not violate article first, § 8); *State* v. *Campfield*, 44 Conn. App. 6, 17, 687 A.2d 903 (1996) (compelling defendant to submit to atomic absorption test did not violate article first, § 8), cert. denied, 240 Conn. 916, 692 A.2d 814, cert. denied, 522 U.S. 823, 118 S. Ct. 81, 139 L. Ed. 2d 39 (1997).

In the present case, the defendant was ordered to provide a handwriting exemplar for comparison with the notebook found in Caban's apartment. A handwriting exemplar is a clear example of "nontestimonial" evidence, a fact that the defendant does not dispute.[15] See *Gilbert* v. *California*, supra, 388 U.S. 263 ("[n]o claim is made that the content of the exemplars was testimonial or communicative matter"). As such, it falls outside of any constitutional protection.[16] Accordingly, the defendant's claim relying on the Connecticut constitution fails under the third prong of *Golding*.

The judgment is reversed only as to the conviction of manufacturing a bomb and possession of an explosive and the case is remanded for a new trial on those charges. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The defendant was convicted in 1996. His subsequent appeal was dismissed by this court for not being filed in a timely manner. In 2013, as a result of a stipulated judgment in a habeas corpus action brought by the defendant, the defendant's appellate rights were restored, resulting in the present appeal.

[2] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[3] At trial, the state's explosives expert described the M-1000 as "a hollow cardboard tube . . . filled with a[n] [explosive] powder . . . ." On one end of the device is "a hobby fuse . . . used as a wick."

[4] Because we consider the language of § 53-80a to be plain and unambiguous, the rule of lenity, as raised by the defendant in this appeal, does not apply to our analysis. See *State* v. *Lutters*, 270 Conn. 198, 219, 853 A.2d 434 (2004) ("[T]he touchstone of [the] rule of lenity is statutory ambiguity. . . . Thus . . . courts do not apply the rule of lenity unless a reasonable doubt persists about a statute's intended scope *even after resort to the language*

*and structure, legislative history, and motivating policies of the statute.*" [Citation omitted; emphasis in original; internal quotation marks omitted.]).

[5] The requirement that the court give an accomplice credibility instruction has existed for decades. In *State* v. *Brown*, 187 Conn. 602, 612–13, 447 A.2d 734 (1982), our Supreme Court explained that "[i]t is well established that 'where warranted by the evidence, it is the court's *duty* to caution the jury as to the testimony of an accomplice in its charge.' . . . *State* v. *Ferrara*, 176 Conn. 508, 511, 408 A.2d 265 (1979); see *Bruton* v. *United States*, 391 U.S. 123, 136, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968); *State* v. *Estep*, 186 Conn. 648, 652, 443 A.2d 483 (1982); *State* v. *Ruth*, [181 Conn. 187, 196–97, 435 A.2d 3 (1980)]; *State* v. *Colton*, 174 Conn. 135, 140, 384 A.2d 343 (1977); *State* v. *Carey*, 76 Conn. 342, 349, 56 A. 632 (1904). 'The conditions of character and interest most inconsistent with a credible witness, very frequently, but not always, attend an accomplice when he [or she] testifies. When those conditions exist, it is the duty of the judge to specially caution the jury . . . .' *State* v. *Carey*, [supra, 349]. In this case, because of [the witness'] status as a self-confessed accomplice in the crimes for which the defendant was being tried and her possible interest in favorable treatment, the evidence warranted the giving of the cautionary accomplice instruction. See *State* v. *Ruth*, [supra, 196–97]." (Emphasis in original.)

[6] We address the merits of the defendant's remaining claims because they relate to the conviction of possession of narcotics or are likely to arise on retrial. See *State* v. *T.R.D.*, 286 Conn. 191, 195, 942 A.2d 1000 (2008).

[7] We will review an unpreserved claim when "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40.

[8] The defendant argues that the state is judicially estopped from arguing on appeal that manufacturing a bomb is not the same offense as possession of explosives because, when explaining the contents of a substitute information, the prosecutor told the court that "[t]he new charges now, the third count, manufacturing a bomb, basically, Your Honor, is the same offense, pretty much the same elements as the fourth count, [possession of an explosive device] . . . ."

"Typically, judicial estoppel will apply if: 1) a party's later position is clearly inconsistent with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel. . . . We further limit judicial estoppel to situations where the risk of inconsistent results with its impact on judicial integrity is certain. . . . Thus, courts generally will not apply the doctrine if the first statement or omission was the result of a good faith mistake . . . or an unintentional error." (Internal quotation marks omitted.) *Dougan* v. *Dougan*, 301 Conn. 361, 372–73, 21 A.3d 791 (2011).

In the present case, the state was not advancing a legal argument that possession of explosives and manufacturing a bomb are the same offense, but merely explaining the substance of the additional charge added to the information. As such, judicial estoppel is not applicable in this case.

[9] General Statutes § 29-343 provides in relevant part: "Explosive . . . means any chemical compound or any mechanical mixture that contains oxidizing and combustible units or other ingredients in such proportions, quantities or packing that ignition by fire, friction, concussion, percussion or detonator may cause such a sudden generation of highly heated gases that the resultant gaseous pressure is capable of destroying life or limb or of producing destructive effects to contiguous objects . . . ."

[10] General Statutes § 29-348 provides: "Any person, having in his possession any explosive for which he has not a bill of sale or who cannot produce legal evidence showing that he obtained such explosive by a legal transfer, shall be fined not more than ten thousand dollars or imprisoned not more than ten years or both for each offense."

[11] General Statutes § 53-80a provides in relevant part: "Any person, other than one engaged in the manufacture of firearms or explosives or incendiary devices for lawful purposes, who fabricates, in any manner, any type of an explosive, incendiary or other device designed to be dropped, hurled, or set in place to be exploded by a timing device, shall be guilty of a class B felony."

[12] The defendant argues that one cannot fabricate an explosive device without first possessing an explosive and therefore possession is an element of manufacturing a bomb. In support, he cites cases from other jurisdictions, but fails to identify any Connecticut case for this proposition. All but one of these cases concern possession and manufacture of narcotics, not explosives or an explosive device, and are plainly distinguishable. The remaining case, *United States* v. *Buchanan*, 830 F.2d 146, 147 (10th Cir. 1987), concerns a defendant who was convicted of both manufacture and possession of an explosive device under a single statute. That case is also distinguishable from the present case, where the defendant was convicted under two distinct statutes, each with a different purpose and different elements. Accordingly, we do not find the cases cited by the defendant to be on point. Further, § 53-80a does not contain any reference to possession as an element of the offense of manufacturing a bomb.

[13] There is no dispute that jeopardy first attached prior to the acquittal, as the jury had been empaneled and sworn. See *State* v. *Jimenez-Jaramill*, 134 Conn. App. 346, 375 n.18, 38 A.3d 239 ("[i]n jury trials, jeopardy attaches when a jury is empaneled and sworn"), cert. denied, 305 Conn. 913, 45 A.3d 100 (2012).

[14] As we reverse the defendant's conviction of possession of an explosive, we limit our review of the court's instructions on possession to those concerning the charge of possession of narcotics.

[15] The defendant argues that handwriting exemplars should be treated differently than other forms of nontestimonial evidence under the Connecticut constitution's self-incrimination clause because compelling a defendant to submit this type of evidence subjects a person accused of a crime to the "cruel trilemma" of self-accusation, perjury, or contempt. See *State* v. *Steiger*, 218 Conn. 349, 365 n.16, 590 A.2d 408 (1991). In interpreting this clause, our courts draw a line between testimonial evidence, falling within the clause's protection, and nontestimonial evidence, falling without. The defendant provides no authority for the proposition that the line be redrawn in the manner sought.

[16] The defendant asks that we break from our Supreme Court's precedent and hold that the Connecticut constitution's self-incrimination clause provides broader protection than the fifth amendment to the federal constitution in that it applies to nontestimonial evidence. "It is axiomatic that the trial court and this court are without authority to overrule the decisions of our Supreme Court. In the absence of direction by our Supreme Court, inferior courts must continue to adhere to its decisions." *West Hartford* v. *Murtha Cullina, LLP*, 85 Conn. App. 15, 24, 857 A.2d 354, cert. denied, 272 Conn. 907, 863 A.2d 700 (2004). Accordingly, we cannot be persuaded by the defendant's argument.